TRANS PACIFIC INTERACTIVE, INC.
v.
U.S. TELEMETRY CORPORATION; U.S. TELEMETRY NETWORK, INC.; U.S. TELEMETRY-BAKERSFIELD, LLC; DATEX SPECTRUM, LLC; THOMAS L. SIEBERT, K. STEVEN ROBERTS, ROBERT S. MILLER, DON M. CLARKE, JAMES K. GABLE, CHARLES M. BRUCE; JOHN J. BROUSSARD; HENRY (HANK) MILLS; CLAY M. ALLEN; and STEPHEN D. GAVIN.
No. 2008 CA 2174.
Court of Appeals of Louisiana, First Circuit.
Not Designated for Publication
May 8, 2009.
CATHERINE S. ST. PIERRE, JAMES R. LEWIS, MARY G. ERLINGSON, Attorneys for Plaintiff-Appellant, Trans Pacific Interactive, Inc.
H. ALSTON JOHNSON, III, JANE A. ROBERT, MICHAEL D. HUNT, KIMBERLY R. LAHAYE, Attorneys for Defendants-Appellees, Texaco Group, LLC and Texaco Development Corporation.
Before: PETTIGREW, McDONALD, and HUGHES, JJ.
PETTIGREW, J.
In this case, plaintiff, Trans Pacific Interactive Inc. ("TPI"), challenges the trial court judgment sustaining an exception raising the objection of no cause of action filed by defendants, Texaco Group, LLC ("TG") and Texaco Development Corporation ("TDC") (hereinafter sometimes referred to collectively as Texaco"). For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 15, 2003, TPI filed suit against numerous defendants including U.S. Telemetry Corporation ("USTC") and U.S. Telemetry Network ("USTN") for violations of Louisiana's Blue Sky Law, La. R.S. 51:701, et seq. TPI alleged that USTC, through its Board of Directors and officers, made material misrepresentations to it that caused TPI to trade its 218 MHz radio spectrum license for the Bakersfleld, California market in exchange for securities in USTC resulting in huge financial losses to TPI. On August 2, 2004, TPI filed a first supplemental and amending petition adding TG and TDC as defendants. Texaco responded with an exception raising the objection of vagueness. The trial court sustained the exception, but gave TPI an opportunity to amend its petition. On November 19, 2007, TPI filed a second amended petition for damages, prompting an exception raising the objection of no cause of action by Texaco. Following a hearing on the exception, the trial court sustained same. On May 6, 2008, the trial court signed a partial final judgment pursuant to La. Code Civ. P. art. 1915(A)(1), dismissing TPI's suit, with prejudice, as to Texaco. It is from this judgment that TPI has appealed.

LAW AND ANALYSIS
The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Ramey v. DeCaire, XXXX-XXXX, p. 7 (La. 3/19/04), 869 So.2d 114, 118. No evidence may be introduced to support or controvert the exception raising the objection of no cause of action. La. Code Civ. P. art. 931. In addition, all facts pled in the petition must be accepted as true. Rebardi v. Crew boats, Inc., XXXX-XXXX, p. 3 (La. App. 1 Cir. 2/11/05), 906 So.2d 455, 457. Thus, the only issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Ramey, XXXX-XXXX at 7, 869 So.2d at 118; Rebardi, XXXX-XXXX at 3, 906 So.2d at 457. In reviewing the petition to determine whether a cause of action has been stated, the court must, if possible, interpret it to maintain the cause of action. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated. Livingston Parish Sewer Dist. No.2 v. Millers Mut. Fire Ins. Co. of Texas, 99-1728, p. 5 (La. App 1 Cir. 9/22/00), 767 So.2d 949, 952, writ denied, 2000-2887 (La. 12/8/00), 776 So.2d 1175.
Appellate courts review a judgment sustaining a peremptory exception raising the objection of no cause of action de novo. This is because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. Ramey, XXXX-XXXX at 7-8, 869 So.2d at 119; see also Fink v. Bryant, XXXX-XXXX, p. 4 (La. 11/28/01), 801 So.2d 346, 349.
On appeal, TPI assigns two specifications of error: (1) the trial court erred in granting Texaco's exception raising the objection of no cause of action regarding control party liability under Louisiana's Blue Sky Law; and (2) the trial court erred in granting TG's exception raising the objection of no cause of action regarding TPI's claims under the theory of respondeat superior.
In oral reasons for judgment, the trial court provided a detailed analysis of its ruling,[1] which we incorporate and adopt herein as part of our opinion:
Well, unfortunately, this has been somewhat déjà vu all over again. This is the second amended petition by Trans Pacific, which, according to my review, was approximately 44 pages and some 244 paragraphs. The exceptions are on behalf of Texaco Development who is alleged to be a shareholder in the defendant U.S. Telemetry Corporation, as well as Texaco Group, who was the employer of Mr. Gable, the individual that, pursuant to their Stock Purchase Agreement, Texaco Development placed on the board of U.S. Telemetry. And having reviewed, and that was the obvious starting point before I read the arguments, was to review the allegations of the second amended and restated petition, I don't see a lot of difference between this petition and the allegations that were made as to the Texaco defendants in the Southeast Wireless case, their first through fourth amending petitions. And none of the new allegations that have been made as to the Texaco defendants, and I accept them as true for the purposes of an exception of no cause of action, are sufficient to state a cause of action as a control person under R.S. 51:702. ... And I look at the allegation in paragraph 2 of plaintiffs petition, and it correctly states that this suit arises from contractual and securities transactions between plaintiff, Trans Pacific Interactive, Incorporated, and the defendants, USTC and Datex, and this allegation is repeated throughout the petition about these contractual and securities transactions between plaintiff and these two entities. There's no allegations in the petition as to any contract or any securities transactions between plaintiff and Texaco, the reason being is that basically Texaco stands in the same position as Trans Pacific. It invested likewise in U.S. Telemetry and kind of got left to hang out to dry just like all the other investors. What the new petition fails to allege with any sufficient facts is, first, that Texaco ever contracted with the plaintiff in any capacity, and, again, as I said, either sales or security; that Texaco, whether it's Group or Development, either of the two defendants, controlled USTC within the meaning of 51:702. Rather, they were a shareholder. As Southeast Wireless alleged, they had certain peremptive rights as per their Stock Purchase Agreement. They were able to place one member on a five-member board of directors, which they did so after Mr. Gable did a due diligence not on behalf of Trans Pacific, but on behalf of Texaco to make a determination of whether or not they even wanted to invest the initial $5 million into the corporation. And plaintiff acknowledges in paragraph 171. that Texaco was a strategic customer, and I don't think Texaco disputes that fact, and that they were a strategic investor in USTC, and that as a result, and this is the same thing that Southeast Wireless alleged, Texaco had exclusive use of certain technology, that being the stuff that was taking place in Bakersfield. But none of which, none of these allegations taken as true, establishes that Texaco had control over the operations of USTC as required under 51:702. And as I read through the petition, plaintiff used the term Texaco and Gable somewhat interchangeably, as well as Texaco and USTC; however, a reading of the petition as a whole shows that it's incorrect. The actual allegations, if you read through, are directed either to USTC because of the contractual relations and the securities transactions or as to Mr. Gable as an officer  I mean, as a director of USTC with no real factual support to include Texaco in those allegations. And there's also no facts to show that Gable was acting within the course and scope of his employment with the Texaco Group to impose liability against that entity under the doctrine of respondeat superior. Again, I hate to say it, but these are almost the identical allegations and the arguments that were made to this Court and rejected in the Southeast Wireless case, and therein I dealt with the control issue on the part of Texaco and the employment respondeat superior claim, both of which I rejected, these same claims that Texaco exercised control over USTC as per the terms of the same contracts and the same agreements that's now relied upon by Trans Pacific. And the mere fact that plaintiff now, and this is, I guess, what I found the most distinguishing feature between this and Southeast Wireless, Southeast Wireless concentrated on the fact that Texaco, pursuant to the Stock Purchase Agreement and the other investment agreements between Texaco and USTC, had the ability to exercise control over the policies and procedures of USTC, Trans Pacific takes a more narrow approach and says, well, we're not going to say they did that, but they definitely had an interest in the Bakersfield license, and, therefore, tried to exercise control over how that asset was managed. And, again, sounding like a broken record, going back to my Southeast Wireless ruling, and I see the same thing in here, under the terms and conditions of the Stock Purchase Agreement, Texaco had certain peremptive rights and had the ability to protect its interests and investments, specifically with regard to the Bakersfield license, and by doing so, I don't think that equates to control under 51:702. I guess the long and the short of it is, is that after reading all 44 pages  and I do tip my hat to plaintiff. Y'all did a much better and a yeoman's job of trying to keep Texaco in, as did Southeast Wireless, but at the end of the day, after reading through all of this and having to take those paragraphs that I alluded to and then apply them to the body of the allegations as to specifically who transacted with whom, the amended petition is really long on conclusion and short on facts and support. So for those reasons, as well as the oral reasons stated by the Court on October 17, '05, and March 27, '06, in the Southeast Wireless case, both of which the parties conveniently attached to the exceptions and the opposition, the Court's going to maintain the exception of no cause of action on behalf of Texaco Development and Texaco Group, and I'm going to dismiss plaintiffs claim as to those two defendants, with prejudice, at plaintiffs costs.
In addressing the merits of this appeal, we cannot find, after reviewing TPI's second amended petition, that the trial court erred in sustaining Texaco's exception raising the objection of no cause of action. Accepting all of the allegations in the petition as true, and applying the legal principles for the exception raising the objection of no cause of action to the facts herein, we find the trial court properly sustained Texaco's exception raising the objection of no cause of action. There are simply no factual allegations in TPI's petition to support a cause of action against Texaco. Thus, for the above and foregoing reasons, we affirm the judgment of the trial court and assess all costs associated with this appeal against TPI. We issue this memorandum opinion in accordance with Uniform RulesCourts of Appeal, Rule 2-16.1B.
AFFIRMED.
NOTES
[1] In its oral reasons for judgment, the trial court makes several references to its decision in the "Southeast Wireless" case and the similarities between the two cases. In Southeast Wireless Network, Inc. v. U.S. Telemetry Corporation, XXXX-XXXX (La. App. 1 Cir. 7/6/07) (unpublished), writ denied, XXXX-XXXX (La. 11/16/07), 967 So.2d 525, a case arising out of the same basic facts as this case, this court affirmed a judgment sustaining an exception raising the objection of no cause of action filed by Texaco as to the Southeast Wireless plaintiffs.